**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

MOSES PASTRAN,

      Plaintiff-Appellant,

v.

K-MART CORPORATION,

      Defendant-Appellee.

No. 99-2210

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-98-815-LCS/JHG)

---

Michael T. Milligan, El Paso, Texas, for Plaintiff-Appellant.

Deborah D. Wells, Kennedy, Moulton & Wells, Albuquerque, New Mexico, for
Defendant-Appellee.

---

Before **SEYMOUR**, Chief Judge, and **ALARCÓN**[*] and **BALDOCK**, Circuit
Judges.

---

**BALDOCK**, Circuit Judge.

---

    [*] The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States
Court of Appeals for the Ninth Circuit, sitting by designation.

Plaintiff Moses Pastran filed an action in federal district court against Defendant K-Mart Corporation. Plaintiff's complaint alleged, among other things, that Defendant terminated him in retaliation for his complaints of discrimination. The district court concluded that Plaintiff failed to raise any factual issue regarding whether Defendant's proffered reason for terminating Plaintiff was pretextual, and granted summary judgment for Defendant. Plaintiff appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

I.

Plaintiff worked at Defendant's Deming, New Mexico store from 1977 to 1997. In 1990, a falling display shelf injured Plaintiff's back while he was working as receiving manager. Plaintiff filed a workman's compensation claim. For roughly the next three years, Plaintiff took time off to recover, working part time in the mornings. Ultimately, Plaintiff remained 9% permanently disabled and unable to lift more than 20 pounds. Defendant subsequently demoted Plaintiff to the entry-level position of register operator. Plaintiff repeatedly sought promotion to a management job, but to no avail.

In 1992 or 1993, Defendant named Denzil D. Van Swearingen the new manager of the Deming store. Plaintiff had several conflicts with Van Swearingen, whom Plaintiff felt disliked him because he was Hispanic, male, and

unable to lift heavy objects.  On several occasions, Plaintiff asked Van Swearingen for a promotion to a management job, and each time Van Swearingen refused.  Plaintiff felt that white females were more often promoted and were subject to less rigorous discipline than him.

On November 14, 1996, human resources director Maggie Busse and assistant manager Jeannette Cowles offered Plaintiff a promotion to Do It Yourself (DIY) manager.  Plaintiff was on vacation, so Busse called him at home and asked him to come to the store to discuss the promotion.  Plaintiff asked for an opportunity to discuss the schedule changes with his wife, Lisa Pastran.  The next day, Plaintiff's wife called Busse to accept.  On November 18, when Plaintiff reported to work as DIY manager, Van Swearingen told Plaintiff that he had given the promotion to someone else because Plaintiff had not accepted the offer in time.  Van Swearingen gave the position to Debbie Taylor, a white female.

That afternoon, Plaintiff and his wife called Busse to complain that they thought Plaintiff's loss of the DIY promotion was discriminatory.  The Pastrans also complained to district manager Louise Shankles in Las Cruces, New Mexico. Later that week, Shankles came to the Deming store and met with Van Swearingen, Busse, Cowles, and Plaintiff and his wife for about three or four hours.  Plaintiff testified in his deposition that he watched Shankles "verbally reprimand[] Mr. Van Swearingen, telling him that what they had done was very

wrong." [1]   Shankles told Cowles the same thing, adding that filling the position "could have waited until [Plaintiff's] return off [his] vacation . . . ."

Plaintiff also stated that Shankles apologized to him and "told Mr. Van Swearingen that the next promotion would be [Plaintiff's]," saying, "'Isn't that right, Mr. Van Swearingen[?]'" Lisa Pastran testified that Shankles called the management "very unprofessional," adding, "[T]hey should never have called [Plaintiff] in off his vacation [because] it wasn't the office of the president that they were trying to fill."

The store management's deposition testimony confirms that Shankles was critical of their handling of the DIY promotion. Van Swearingen testified about his meeting with Shankles: "[T]owards the end I probably had the feeling that

---

[1]   When reviewing an order granting summary judgment, we may only consider admissible evidence. Fed. R. Civ. P. 56(e); Wright-Simmons v. City of Oklahoma City , 155 F.3d 1264, 1268 (10th Cir. 1998). Although the evidence need not be in a form that would be admissible at trial, the content or substance of the evidence must be admissible. Wright-Simmons , 155 F.3d at 1268. Shankles's statements to Plaintiff, his wife, Van Swearingen, Cowles, and Busse would be admissible at trial as nonhearsay for two reasons. First, if Plaintiff offers the statements to show that Shankles reprimanded Van Swearingen—as evidence of retaliatory motive —then they are not being offered for the truth of the matter asserted. See Fed. R. Evid. 801(c); United States v. Norman T. , 129 F.3d 1099, 1107 (10th Cir. 1997), cert. denied , 523 U.S. 1031 (1998). Second, if Plaintiff does offer the statements against Defendant for their truth ( i.e. , that the managers were wrong and acted unprofessionally), then they are vicarious admissions by a party-opponent because Shankles was an agent of Defendant acting within the scope of employment during the time of employment. See Fed. R. Evid. 801(d)(2)(D).

-4-

this is an incident she didn't want to be involved in, and she wished it hadn't happened." Van Swearingen testified that Shankles said, "Well, looking back, we could have waited, and we agreed that we probably could have, but we made a mistake by not waiting." Van Swearingen confirmed Plaintiff's testimony that Shankles apologized to Plaintiff and promised him that he would receive the next available promotion. Cowles and Busse testified that they understood from the meeting with Shankles that Plaintiff was to receive the next available promotion. On January 2, 1997, about six weeks later, Plaintiff accepted a promotion to Health and Beauty Aids manager.

On January 23, 1997, Plaintiff had a confrontation with management about whether he must open a cash register. The service desk manager, Sandra Palmer, called Plaintiff over the public address system to open a register. Plaintiff told her that he had a headache and needed to take some aspirin first. Next, Cowles asked Plaintiff to open a register, and Plaintiff again asked for time to take an aspirin for his headache. Finally, Van Swearingen asked Plaintiff to come to his office, where he told him to either open a register or, if he was too sick, to clock out and go home. When Plaintiff refused, Van Swearingen called the police to escort Plaintiff away.

Plaintiff called Van Swearingen the next day and asked whether he had lost his job. Van Swearingen replied that he was not sure. Van Swearingen consulted

with Shankles and Defendant's legal department about preparing statements regarding the lost DIY promotion and the insubordination and about deciding how to handle Plaintiff's termination. On January 27, the following Monday, Van Swearingen read Plaintiff a written statement telling him that he was fired. At the time Defendant fired him, Plaintiff was employee of the year at the Deming store. Van Swearingen thought highly of Plaintiff's ability to work with customers.

Plaintiff filed a complaint in the district court alleging that Defendant violated Title VII, 42 U.S.C. §§ 2000e to 2000e-17, by failing to promote him and terminating him in retaliation for his complaints of discrimination and on the basis of his sex and national origin. Defendant filed a motion for summary judgment arguing that Plaintiff had not established a prima facie case on any of his claims. The district court granted summary judgment for Defendant on the wrongful termination claims, concluding that Plaintiff had not shown that Defendant's proffered reason—Plaintiff's insubordination—was pretextual. The district court later dismissed Plaintiff's failure to promote claims as time barred. [2]

_____

[2] Because New Mexico's Department of Labor is an "agency with authority to grant or seek relief" from unlawful employment practices, Plaintiff had 300 days "after the alleged unlawful employment practice occurred" to file a charge. 42 U.S.C. § 2000e-5(e)(1). In addition, "a plaintiff may recover for incidents which occurred outside the statutory time limit if at least one instance of the alleged discriminatory practice occurred within the limitations period and the earlier acts are part of a 'continuing pattern of discrimination.'" Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1310 (10th Cir. 1999) (quoting Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993)). Plaintiff

On appeal, Plaintiff argues that the district court erred in granting summary judgment for Defendant on the termination claims by not fully considering his evidence of pretext. [3] We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Jones v. Denver Post Corp., 203 F.3d 748, 751 (10th Cir. 2000).

II.

Title VII prohibits employers from retaliating against employees who claim discrimination: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . under [Title VII]." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse

filed a charge with the New Mexico Department of Labor on October 6, 1997—252 days after his termination, but 322 days after his lost promotion. Once the district court granted summary judgment on the termination claims, the failure to promote claims were time barred because they were no longer part of a continuing pattern that included incidents within the limitations period.

[3] Plaintiff's brief does not challenge the district court's dismissal of the failure to promote claims or the discrimination claims. Accordingly, those matters are not before us. See Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 624 (10th Cir. 1998).

employment action.   McGarry v. Board of County Comm'rs of the County of Pitkin, 175 F.3d 1193, 1201 (10th Cir. 1999).

We agree with the district court's conclusion that Plaintiff made a prima facie case of retaliation under Title VII by showing that he complained to Shankles and that he was terminated shortly thereafter. [4] See Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999) (informal complaints to superiors or the use of the employer's internal grievance procedures constitutes protected activity under Title VII); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999) (termination is an adverse employment action under the ADA); [5] Bullington, 186 F.3d at 1321 (protected conduct closely followed by adverse action supports an inference of causal connection). Defendant claims, however, that it terminated Plaintiff for his insubordination on January 23, 1997, when he told the store's management that he could not open a cash register. This

_____

[4] Plaintiff may still proceed on his retaliation claim despite the fact that the district court dismissed his discrimination claims. "[A] plaintiff does not have to prove the validity of the grievance [he] was allegedly punished for lodging; 'opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated.'" Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999) (quoting Love v. RE/MAX of America, Inc., 738 F.2d 383, 385 (10th Cir. 1984)).

[5] Cases interpreting the ADA retaliation provisions are persuasive authority in Title VII retaliation cases because the statutory provisions are substantially similar. See Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).

reason is non-discriminatory; accordingly, Plaintiff must present evidence that Defendant's proffered reason is pretextual.

Retaliation claims under Title VII are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Jones, 203 F.3d at 752. The plaintiff bears the initial burden of establishing a prima facie case of discrimination. Jones, 203 F.3d at 752. If the plaintiff does so, then the defendant must offer a legitimate, non-discriminatory reason for its employment action. Id. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. Id. A plaintiff may demonstrate pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999).

"[T]he pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual." Hardy v. S.F. Phosphates L.C., 185 F.3d 1076, 1080 (10th Cir. 1999) (internal quotations omitted). Close temporal proximity between the employee's complaint and the adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for

retaliation.  Medlock v. Ortho Biotech, Inc. , 164 F.3d 545, 551 (10th Cir.), cert. denied , 120 S. Ct. 48 (1999); see also Butler v. City of Prairie Village, Kan. , 172 F.3d 736, 752 (10th Cir. 1999) (holding that close temporal proximity is a factor in showing pretext for retaliation in violation of the ADA).

Defendant's failure to promote Plaintiff to DIY manager, Plaintiff's complaints to the store management and to district manager Shankles, Shankles's visit, and Plaintiff's termination all occurred between November 14, 1996 and January 27, 1997.  This close temporal proximity suggests pretext, but is not sufficient by itself to raise an issue of fact. Cf. Conner v. Schnuck Mkts., Inc. , 121 F.3d 1390, 1397 (10th Cir. 1997) (noting that temporal proximity alone does not constitute pretext for retaliatory discharge under the Fair Labor Standards Act); see also Anderson , 181 F.3d at 1180 (holding that absent other evidence, temporal proximity alone did not establish pretext for retaliation under the ADA).

Plaintiff, however, offers two additional items of evidence that demonstrate pretext.  First is the district manager's reprimand.  Shankles traveled to Deming for a three to four hour meeting with Plaintiff, his wife, Van Swearingen, Cowles, and Busse.  During the meeting, Shankles apologized to Plaintiff and his wife.  Shankles told Van Swearingen and Cowles that they had made a mistake and should not have filled the DIY manager position so quickly.  Also, Shankles told Van Swearingen, Cowles, and Busse that Plaintiff was to receive the next

-10-

promotion available. A reasonable jury could conclude that the reprimand given to Van Swearingen could have motivated Van Swearingen's decision to terminate Plaintiff.

Second, Van Swearingen's deposition reveals that he and Shankles considered the events surrounding the lost promotion while deliberating about whether to terminate Plaintiff. Van Swearingen believed that the lost promotion increased the chances that Plaintiff would sue. In addition, Shankles told Van Swearingen to prepare statements in anticipation of litigation. A reasonable jury might also consider this circumstantial evidence of retaliatory motive. See Medlock, 164 F.3d at 550-51 (finding direct evidence of retaliatory motive in an employer's letter stating that it was firing the plaintiff because he gave a deposition complaining about unequal pay).

In combination with the evidence of temporal proximity, this evidence—although far from conclusive—raises an issue of material fact as to whether Defendant offered a pretextual reason for terminating Plaintiff. See Medlock, 164 F.3d at 551 (affirming the district court's denial of the defendant's motion for a judgment as a matter of law based on evidence of temporal proximity plus direct evidence of retaliatory motive); Butler, 172 F.3d at 752 (holding that temporal proximity, plus evidence that the defendant resurrected the plaintiff's job duties under another title, burdened the plaintiff with additional duties before

firing him, and fired no one else at that time, raised a fact issue regarding whether the alleged reorganization was a pretext for retaliatory discharge under the ADA).[6]  This is a close case because Plaintiff may have engaged in misconduct by telling the store managers that he could not open a cash register.  Nevertheless, the evidence of pretext indicates that the issue of retaliation should go to a jury. Accordingly, we find that the district court erred in granting summary judgment for Defendant on Plaintiff's Title VII retaliatory termination claim.          [7]

REVERSED and REMANDED for further proceedings.

---

[6] Our sister circuits provide more examples of evidence that shows retaliatory motive.    See Strother v. Southern Cal. Permanente Med. Group     , 79 F.3d 859, 870 (9th Cir. 1996) (determining that letters praising the plaintiff's interpersonal skills, combined with temporal proximity, were sufficient reason to question employer's claim that it fired plaintiff for poor interpersonal skills); O'Bryan v. KTIV Television   , 64 F.3d 1188, 1194 (8th Cir. 1995) (finding that temporal proximity, increased job duties, and the employer's statements indicating retaliatory motive were sufficient to raise a fact issue regarding pretext);         San Filippo v. Bongiovanni   , 30 F.3d 424, 434, 444 (3d Cir. 1994) (treating supervisors' statements calling the plaintiff a "[w]arrior" and referring to "a long history of animus" as evidence of pretext that augmented the evidence of temporal proximity).

[7] Plaintiff has not argued, and the district court did not address, whether his termination may have been in retaliation for his complaints of disability discrimination in violation of the ADA, 42 U.S.C. § 12203(a).  Generally, an appellate court will not consider issues that were not raised in the district court. Tele-Communications, Inc. v. Commissioner of Internal Revenue     , 104 F.3d 1229, 1232 (10th Cir. 1997).