**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DELILAH STAHL,

   Plaintiff-Appellant

  v.

BOARD OF COUNTY
COMMISSIONERS OF THE
UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS
CITY, KANSAS,

   Defendant-Appellee.

No. 03-3068

(D. Kansas)

(D.C. No. 01-CV-2539-CM)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HENRY,** and **McCONNELL**, Circuit Judges.

  Sergeant Delilah Stahl appeals the district court's grant of summary

judgment against her and in favor of the Board of County Commissioners of the

Unified Government of Wyandotte County (the County) on her claims for gender

discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 2000e.  Sergeant Stahl's complaints arise out of the County's administration of a physical fitness test to applicants for positions in its newly-created Special Enforcement Unit (SEU).

For substantially the same reasons as the district court, we conclude that Sergeant Stahl failed to present sufficient evidence from which a factfinder could conclude that the County discriminated against her because of her gender or in retaliation for conduct protected by Title VII.  Accordingly, we affirm the grant of summary judgment to the County.

## I.  FACTUAL BACKGROUND

Sergeant Stahl has worked for the County as a police officer since 1981 and has served as a sergeant since 1992.  From October 1998 until January 14, 2001, she was a supervisor in the County Police Department's Vice and Narcotics Unit.

In June 2000, newly-appointed Chief of Police Ronald Miller decided to combine the Vice and Narcotics Unit and the Department's tactical SWAT team (referred to as its "S.C.O.R.E Unit") into the SEU.  According to the district court "[i]t [was] uncontroverted that the decision to combine the two units was not made to remove [Sergeant Stahl] from her position or otherwise discriminate against her.  Rather, the decision was a legitimate restructuring."  Aplt's App. at 119 (Dist. Ct. Order, filed Jan. 24, 2003).

Since the mid 1980s, the County had required its S.C.O.R.E. Unit officers, including sergeants, to pass both an initial fitness test as a qualification for the job and subsequent tests to remain in the unit. The County also required S.C.O.R.E. officers to participate in on-duty physical fitness training. In contrast, officers in the Vice and Narcotics Unit, where Sergeant Stahl worked, were not required to complete a fitness test, nor were those officers required to participate in fitness training.

Because all officers in the SEU would be expected to undergo tactical training and perform tactical duties, Chief Miller and the command staff decided that successful completion of a physical fitness test also should be a qualification for selection. Chief Miller decided to use the same fitness test that had been used for S.C.O.R.E. applicants. According to Chief Miller, "many women have taken that same test and passed it." Aplt's App. at 111.

The test consisted of the following components: (1) skinfold assessment; (2) trunk flexion; (3) trunk extension; (4) bent-knee sit-ups; (5) a twelve-minute run; (6) push-ups; (7) pull-ups; (8) squat thrusts; (9) bench press; (10) standing broad jump; and (11) standing vertical leap. The County required a composite score of seventy to pass the test, which was determined by adding together the percentage scores on each event and dividing the number by eleven. An applicant did not have to complete every event successfully to pass the test.

In July 2000, Sergeant Stahl learned that the Vice and Narcotics Unit and the S.C.O.R.E. Unit would be combined into the SEU. Around the third week of September 2000, officers in the Vice and Narcotics Unit began discussing the possibility of requiring a physical fitness test. At the end of September 2000, Sergeant Stahl obtained a copy of the physical fitness test that had been required for the S.C.O.R.E. Unit. In mid-October, Police Department supervisors notified her that the test would be required for the SEU.

During the last week of September or the first week of October, Sergeant Stahl began working out at home to prepare for the physical fitness test. She requested that she be allowed to attend workout sessions with S.C.O.R.E. officers. Although her request was initially denied, her supervisors reconsidered that decision and granted the request.

During the previous two years, Sergeant Stahl had not engaged in a regular exercise program She considered herself 25 to 30 pounds overweight and had smoked roughly a pack of cigarettes each day for the past 30 years. She continued to smoke while she was training for the test.

Sergeant Stahl believed that she needed more time to prepare for the test, particularly the bench press and the vertical and broad jumps. She informed her supervisors, telling them that the test was not "female-friendly," Aplt's App. at 52. The supervisors encouraged her to continue working out but refused to grant

her more time to prepare.   Sergeant Stahl acknowledged in deposition testimony that she was not treated any differently after she complained about the test.

On October 30, 2000, Sergeant Stahl submitted her application for a sergeant's position in the SEU.  Along with all the other candidates, Sergeant Stahl took the physical fitness on November 7, 2000.  She failed the bench press, vertical jump, broad jump, and trunk extension components, and, as a result, received a failing composite score.  The County selected three male candidates, all of whom had passed the physical fitness test.

According to Sergeant Stahl, the County discriminated against her in the manner in which it administered the test.  In particular, she testified that Captain Mike Armstrong allowed Officer Mike Whitfield (who had applied for a canine officer position) to lie on the floor between each of his last five push-ups.   In contrast, Sergeant Stahl maintained, Captain Armstrong required her to perform extra push-ups, stating that she had performed several incorrectly.   However, Sergeant Stahl pointed to no other occasion when a male applicant had been given favorable treatment.

In November 2001, Sergeant Stahl filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, asserting claims for (1) gender discrimination, and (2) retaliation.  She also asserted a state law claim for breach of an implied employment contract.  As to her gender discrimination claim,

Sergeant Stahl initially sought to recover under disparate impact and disparate treatment theories. See Aplt's App at 2, ¶ 13 (Complaint, filed Nov. 13, 2001).[1] However, in the pretrial order, the parties stated that Sergeant Stahl had abandoned her disparate impact claim and her state law claim. See id. at 20 (Pretrial Order, filed Sept. 5, 2002) (stating that "[p]laintiff has abandoned her Title VII disparate impact claim (Count I) and her Kansas common law claim for breach of implied contract of employment (Count III))."

After Sergeant Stahl filed this action, the County suspended the physical fitness test for SEU applicants and hired a consultant to recommend the most appropriate selection method. The County has hired several more officers for positions with the SEU, on the condition that they may retain their positions only if they pass any new fitness test that is adopted.

Following discovery, the district court granted the County's motion for summary judgment. As to the gender discrimination claim, the court concluded that Sergeant Stahl had failed to present evidence from which a factfinder could reasonably conclude that the County's reliance on the physical fitness test as a

---

[1] Sergeant Stahl alleged in her Complaint that "[t]he actions of [the County] were intentional discrimination against plaintiff or were, in the alternative, the result of an allegedly neutral employment practice employed in a manner which served to work a disparate impact upon plaintiff as a female member of [the County's] workforce." Aplt's App. at 2, ¶ 13.

means of selecting candidates for the SEU was a pretext for discrimination. The court reached a similar conclusion as to Sergeant Stahl's retaliation claim.

## II. DISCUSSION

On appeal, Sergeant Stahl challenges the district court's grant of summary judgment on her gender discrimination claim on three grounds. She argues that the district court erred in (1) applying the subsequent remedial measure rule, FED. R. EVID. 407, to conclude that the County's suspension of the fitness test was not admissible to prove discriminatory intent; (2) finding no evidence of discrimination in the manner in which the test was administered; and (3) rejecting her contentions about the preferential treatment received by Officer Whitfield. As to her retaliation claim, Sergeant Stahl argues that the district court erred in concluding that she offered no evidence that her failure to obtain a position in the SEU resulted from retaliation for conduct protected by Title VII.

We review a summary judgment grant de novo, applying the same standard as the district court pursuant to FED. R. CIV. P. 56, McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir. 2001), and "examin[ing] the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted). "Credibility determinations, the

-7-

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" considering a summary judgment motion. Foster v. AlliedSignal, Inc., 293 F.3d 1187, 1195 (10th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). In this procedural posture, therefore, "our role is simply to determine whether the evidence proffered by [Sergeant Stahl] would be sufficient, if believed by the ultimate factfinder, to sustain [her] claim." Foster, 293 F.3d at 1195.

However, as the nonmoving party, Ms. Stahl must identify "sufficient evidence that would require submission of the case to a jury." Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1555 (10th Cir. 1993). It is not enough that Ms. Stahl's evidence is "'merely colorable'" or anything short of "'significantly probative.'" Id. (quoting Anderson, 477 U.S. at 249-50).

A. Gender Discrimination Claim

In order to assess Sergeant Stahl's claim for gender discrimination under Title VII, we apply the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, Sergeant Stahl may establish a prima facie case of discrimination by producing evidence (1) that she belonged to the protected class; (2) that she was qualified for the position; (3) that she was not selected for the position at issue; and (4) that the

-8-

position either remained open or was filled by a person who was not a member of the protected class. Id. at 802; Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1534 (10th Cir. 1995). "At the prima facie stage, the court need only conclude that the plaintiff has shown, through credible evidence, including her own testimony, that she was minimally qualified for the position she sought, *even if the defendant disputes that evidence.*" See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1316 n.11 (10th Cir. 1999).

Upon production of this evidence, the burden shifts to the County "to articulate some legitimate, nondiscriminatory reason" for the challenged decision. McDonnell Douglas, 411 U.S. at 802. Sergeant Stahl may then demonstrate that the employer's stated reason for not selecting the plaintiff was a pretext for discrimination. McDonnell Douglas, 411 U.S. at 804. To establish pretext Sergeant Stahl must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). She may establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks and citation omitted).

Here, we agree with the district court that Sergeant Stahl has established a prima facie case by offering "credible evidence, including her own testimony, that she was minimally qualified for the position [in the SEU unit]." See Bullington, 186 F.3d at 1316. n.11. Thus, the question before us is whether Sergeant Stahl presented sufficient evidence from which a reasonable factfinder could conclude that the reason provided by the County for not selecting her for the SEU—her failure of the fitness test—was a pretext for gender discrimination.

1. Suspension of the Test

In arguing that the test was pretextual, Sergeant Stahl first points to the County's suspension of the test following the filing of this lawsuit. She maintains that the district court erred in ruling that the suspension of the test was inadmissible under FED. R. EVID. 407. According to Sergeant Stahl, because the suspension of the test constituted evidence of pretext, Rule 407 is inapplicable. This argument involves the interpretation of the Federal Rules of Evidence, and we thus examine it de novo. See Davoll v. Webb, 194 F.3d 1116, 1136 (10th Cir. 1999). Although the application of Rule 407 here is perhaps not in the traditional context, we agree with the district court that precedent allows the conclusion that the County's suspension of the physical fitness test is inadmissible.

Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

FED. R. EVID. 407.

As the County notes, there are two primary grounds for the exclusion of evidence under Rule 407: (1) the limited probative value of subsequent remedial measures; and (2) "[the] social policy of encouraging people to take . . . steps in furtherance of added safety." Hull v. Chevron, U.S.A., 812 F.2d 584, 587 (10th Cir. 1987) (quoting FED. R. EVID. 407 advisory committee's note). Applying this rule, courts have excluded "repairs, changes in construction, installation of new safety devices . . . , changes in rules and regulations, [and] changes in the practice of the business." 23 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE § 5284, at 105 (2d ed. 1980) (internal quotation marks and citation omitted).

Here, as the district court concluded, the County's suspension of the fitness test is inadmissible under Rule 407. The test is the subject of this lawsuit, and as a result, its suspension is a measure that "if taken previously, would have made the injury or harm less likely to occur." FED. R. EVID. 407; cf. Hickman v. Gem

-11-

Ins. Co., 299 F.3d 1208, 1214 (10th Cir. 2002) (concluding that an insurance company's "discontinu[ation] [of] its practice of limiting payment of hospital room and board charges," which was the subject of an ERISA claim, was "not admissible to establish liability because it is evidence of a subsequent remedial measure under Rule 407").  Moreover, Sergeant Stahl seeks to offer the suspension of the test as evidence that the test itself was a pretext for discrimination, thus seeking to prove "culpable conduct" in a manner forbidden by Rule 407.

Additionally, and even more basic, is the fact that even if the suspension of the test were admissible, Sergeant Stahl has failed to establish that this evidence supports the particular claim she asserts here.  Sergeant Stahl is now challenging only the manner in which the test was administered, not the test itself.  Thus, the fact that the County suspended the test in January 2001—which it might have done for a number of reasons—does not indicate that the specific practice of which Sergeant Stahl complains (refusing, in October and November 2000, to grant her more time to prepare for the test) was discriminatory.

2.  Administration of the Test

Sergeant Stahl also argues that the manner in which the County administered the fitness test constitutes evidence of pretext.  Here, she focuses on the short period of time that she had to prepare for the test, arguing that the

-12-

officers who had served in the existing S.C.O.R.E. unit (all of whom were men) were allowed to train on the job for a period of years, while she received only two to three weeks formal notice of the test and thus had insufficient time to train.

In considering this argument, we again note that Sergeant Stahl does not now argue that the test itself was in any manner discriminatory against women or that women as a class needed more time to train for it.[1]  Accordingly, we presume that the test itself provided men and women with equal opportunities to pass it. Thus, the issue before us now is merely whether the County's failing to grant Sergeant Stahl's request for additional time to train for the test constitutes evidence of pretext.

---

[1] Perhaps Sergeant Stahl could have made such an argument.  See Aplt's App. at 39 (Plaintiff's Br. in Opposition to Defendant's Motion for Summary Judgment, filed Nov. 18, 2002) (explaining the basis for Sergeant Stahl's belief that the test was discriminatory and noting that "the requirements were heavily weighted in favor of upper-body strength tests" and that the test did not provide for alternative scoring in the elements of bench press, pull-ups, and push-ups); cf. Lanning v. S.E. Pa. Transp. Auth., 181 F.3d 478, 485 (3d Cir. 1999) (considering a gender discrimination challenge to a police department's requirement that officers be able to run 1.5 miles in under 12 minutes and noting that the department conceded that the requirement had a disparate impact upon women); 29 C.F.R. § 1607 et seq (establishing guidelines for examination procedures in employment); § 1607.3 (stating that "[t]he use of any selection procedure which has an adverse impact on the hiring, promotion, or other employment or membership opportunities of members of any race, sex, or ethnic group will be considered to be discriminatory and inconsistent with these guidelines, unless the procedure has been validated in accordance with these guidelines").  The County did not indicate that it had consulted these guidelines; it might be prudent to do so.

Because Sergeant Stahl has not challenged the test itself, we agree with the district court's analysis. The fact that officers in the existing S.C.O.R.E. unit were allowed to "train" on the job for an extended period while Sergeant Stahl was only allowed to do so when she made a request a few weeks before the fitness test resulted from bona fide differences in their job duties. Thus, as the district court explained, "the fact that [Sergeant Stahl] has not previously been required to participate in physical fitness training was by virtue of the unit to which she was assigned, not her gender." Aplt's App. at 129. Moreover, all of the officers in the Vice and Narcotics Unit in which Sergeant Stahl worked, both male and female, received the same notice of the fitness test and had the same opportunity to train for it.[2]

3. Treatment of Officer Whitfield

Sergeant Stahl also argues that a male candidate, Officer Mike Whitfield, was afforded favorable treatment during the fitness test because he was allowed to rest on the floor between the final few push-ups while she was not. We agree with the district court that this evidence is "isolated and inconsequential." id. at

---

[2] Sergeant Stahl acknowledged that several male officers in the Vice and Narcotics Unit also complained that they did not have enough time to train for the test. See Aple's Supp. App. at 66 ("[A] couple of those guys didn't even put in for taking the test because they didn't think they could get in shape fast enough, and they said they weren't going to test for a job that they already had.").

131. Sergeant Stahl stated that she was aware of no other occasion in which an applicant was given favorable treatment. Moreover, even with the alleged unfavorable treatment that she received, Sergeant Stahl received a passing score. on the push-up element. Finally, Sergeant Stahl presented no evidence of unfavorable treatment on the elements that she failed.

We therefore agree with the district court that the County is entitled to summary judgment on Sergeant Stahl's gender discrimination claim.

## B. Retaliation Claim

Finally, Sergeant Stahl argues that the district court erred in granting summary judgment against her on her retaliation claim. As the district court noted, in order to establish this claim, Sergeant Stahl must prove that: (1) "[s]he engaged in protected opposition to discrimination[;]" (2) the County "subjected [her] to an adverse employment action subsequent to the protected activity[;]" and (3) "a causal connection exists between the protected activity and the adverse employment action." Pastran v. K-Mart Corp., 210 F.3d 1201, 1205 (10th Cir. 2000). Once Sergeant Stahl establishes a prima facie case, the burden of production again shifts to the County to articulate a legitimate, nondiscriminatory reason for the adverse action. Id. If the County presents evidence of a legitimate business reason, Sergeant Stahl must then be allowed to demonstrate that the County's proffered reasons are a mere pretext for discrimination. Id.

-15-

Here, Sergeant Stahl did complain to her supervisors that the fitness test was not "female-friendly." Aplt's App. at 52.[3] However, Sergeant Stahl conceded that she was not treated differently after she complained about the test and that none of her fellow officers made any comments indicating an intent to retaliate. Moreover, it is undisputed that passing the test was a requirement for the position at issue and that Sergeant Stahl failed the test.

Accordingly, a reasonable factfinder could not find a causal connection between Sergeant Stahl's complaint about the test and the County's decision not to select her for a position in the SEU. The district court thus properly granted summary judgment to the County on Sergeant Stahl's retaliation claim.

### III. CONCLUSION

Accordingly, for substantially the same reasons as set forth by the district

---

[3] As noted above, Sergeant Stahl does not now allege that the test itself was not "female friendly." Instead, her complaint is with the manner in which the test was administered. In order to prevail on a retaliation claim, she need not establish that the test was actually discriminatory. See Meeks v. Computer Assocs. Int'l., 15 F.3d 1013, 1021 (11th Cir.1994) ("To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed") (internal quotation marks omitted).

court, we AFFIRM the district court's grant of summary judgment to the County.

Entered for the Court,

Robert H. Henry
Circuit Judge