**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2002**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JUANITA M. FOSTER,

        Plaintiff - Appellant,

v.

ALLIEDSIGNAL INC.,

        Defendant - Appellee.

No. 00-3243

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(No. 97-CV-4232-CM)**

---

David O. Alegria, McCullough, Wareheim & LaBunker, P.A., Topeka, Kansas, for Plaintiff-Appellant.

Daniel B. Boatright (J. Nick Badgerow, with him on the brief), Spencer Fane Britt & Browne LLP, Overland Park, Kansas, for Defendant-Appellee.

---

Before **HENRY** , **HOLLOWAY** , and **LUCERO** , Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

      Plaintiff-Appellant Juanita M. Foster, an employee at AlliedSignal, Inc.

since 1979, injured her arm and lower back in November 1995 while on the job.

In December 1995, after being absent from work for several days, Foster was informed by AlliedSignal that she had been fired. Foster sued AlliedSignal in federal district court, claiming that her employment had been terminated in retaliation for her exercise of protected rights under the Kansas Workers Compensation Act, Kan. Stat. Ann. §§ 44-501 to -5125. AlliedSignal moved for summary judgment, which the district court granted upon concluding that Foster "failed to present clear and convincing evidence that she was not in violation of defendant's attendance policies" (3 Appellant's App. at 808) and that she "failed to set forth sufficient evidence to establish pretext" on the part of AlliedSignal (id. at 809). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

**I**

On November 13, 1995, Foster injured her arm and back when she reached for some parts in a tub that shifted and hit her arm, causing her chair to roll out from under her. She reported her on-the-job injury to an employee in the human resources department, who in turn called Robin Thompson, the company nurse. Nurse Thompson advised Foster to take some ibuprofen, place heat or ice on the strain, and lie down for a few minutes. After this treatment, Foster returned to work and finished her shift.

On November 16, Foster sought further treatment from Dr. Scott Steelman, the company physician. Although Dr. Steelman cleared her to continue working

in her current position, five days later Foster informed Nurse Thompson that her back was hurting and that she wanted to go home. The next day Foster visited her personal physician, Dr. April Bremby, who prescribed medication and physical therapy. Foster continued to work for the month of November.

On December 4, Foster's attorney sent via certified mail a claim for workers compensation benefits; an unidentified employee at AlliedSignal signed for the certified mail on December 7. On December 5, Foster again visited Dr. Bremby, who executed a form requesting that she be placed on medical leave from December 1, 1995, through January 1, 1996, because of work-related injuries; that day, Foster delivered this request to an unidentified AlliedSignal employee at the front desk. On December 7, she was again examined by Dr. Steelman, this time in the presence of Nurse Thompson. After concluding that Foster was able to continue performing her job, Dr. Steelman denied her request for a medical leave of absence and, according to Dr. Steelman and Nurse Thompson, informed Foster of the denial at that time.

Foster did not report to work on December 8, December 11, or December 12, and testified in deposition that she did not call anyone at AlliedSignal on any of those days seeking to be excused from work. [1] AlliedSignal's attendance policy

---

[1] Foster's attorney submitted an affidavit claiming that Foster called AlliedSignal on December 12. Attached to this affidavit was a telephone log

(continued...)

provides for the discharge of an employee when the employee is absent for three consecutive days and has not called, or when the employee is absent for eight or more days within the last 180 days of employment. Foster was absent from work on September 11 and 29, October 5, and December 1, 5, 6, 7, 8, 11, and 12. Bob Trageser, Foster's supervisor, and James P. Williams, an AlliedSignal human resources team leader, jointly decided to terminate Foster—allegedly pursuant to AlliedSignal's attendance policy—with Trageser calling Foster on December 13, 1995, to tell her she had been fired. Although both men knew that Foster was trying to obtain a medical leave of absence, they claim not to have been aware either that she was requesting medical leave due to a work-related injury or that she had filed a workers compensation claim. Foster contends that the explanation given for her termination was pretextual and that she was fired in retaliation for

[1](...continued)
from Southwestern Bell Telephone Company for December 1995 showing that Foster called AlliedSignal twice on December 12.

The district court determined that the affidavit submitted by Foster's attorney set forth facts about which he had no personal knowledge, that such facts were inadmissible as evidence, and that they should therefore not be considered in support of a Fed. R. Civ. P. 56(e) motion for summary judgment. (3 Appellant's App. at 800–01.) Moreover, the court determined that the attorney was incompetent to testify about the telephone log because he lacked personal knowledge of the information contained therein, the document's source, and its authenticity. Having concluded that the unauthenticated phone log was inadmissible, the district court did not consider it in its summary judgment decision. We thus do not consider the affidavit or phone log in our review of the court's summary judgment order.

exercising her rights under the Kansas Workers Compensation Act.

## II

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Cooperman v. David , 214 F.3d 1162, 1164 (10th Cir. 2000). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To avoid summary judgment, the party opposing the motion must establish, at a minimum, an inference of the existence of each essential element to the case. Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994).

Kansas generally follows the employment-at-will doctrine, meaning that employment is terminable at will by either the employer or the employee for any reason or for no reason at all. Moriss v. Coleman Co., 738 P.2d 841, 846 (Kan. 1987). There are exceptions, however, and under Kansas law an employer cannot fire an employee in retaliation for the employee's filing of a workers compensation claim. Murphy v. City of Topeka, 630 P.2d 186, 192 (Kan. 1981).

Moreover, an employee cannot be discharged "for being absent or failing to call in an anticipated absence as the result of a work-related injury," because this would allow an employer an indirect method of firing an employee for filing a workers compensation claim. Coleman v. Safeway Stores, Inc., 752 P.2d 645, 652 (Kan. 1988). Thus, "any absences caused by [an employee's] work-related injury should not be counted against" the employee by her employer. Id. This rule applies even to employees who have not yet filed a workers compensation claim. Ortega v. IBP, Inc., 874 P.2d 1188, 1191 (Kan. 1994).

Foster can recover by "proving that [her] discharge was 'based on,' 'because of,' 'motivated by,' or 'due to' the employer's intent to retaliate." Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998) (quoting Brown v. United Methodist Homes for the Aged, 815 P.2d 72, 88 (Kan. 1991)). However, she does "not need to show that retaliation was the employer's sole motive or reason for the termination." Id. Nor must she provide direct proof of retaliatory intent. "Retaliatory discharge cases must generally be proven by circumstantial rather than direct evidence because rarely will an employer admit to having discharged an employee in retaliation for exercising a right." Chaparro v. IBP, Inc., 873 F. Supp. 1465, 1472 (D. Kan. 1995), aff'd, 104 F.3d 367 (10th Cir. 1996) (unpublished table decision); Marinhagen v. Boster, Inc., 840 P.2d 534, 540 (Kan. Ct. App. 1992).

Because such cases are rarely proven by direct evidence, the Kansas courts have adopted the McDonnell Douglas[2] burden-shifting framework for analyzing retaliatory discharge cases. See Sanjuan v. IBP, Inc., 275 F.3d 1290, 1294 (10th Cir. 2002). At the first stage, a plaintiff makes out a prima facie case raising a rebuttable presumption of retaliatory intent by showing that

> (1) he or she filed a claim for workers' compensation benefits, or sustained an injury for which he might assert a future claim for such benefits; (2) that the employer had knowledge of plaintiff's compensation claim, or the fact that he had sustained a work-related injury for which the plaintiff might file a future claim for benefits; (3) that the employer terminated the plaintiff's employment; and (4) that a causal connection existed between the protected activity or injury, and the termination.

Sanjuan, 160 F.3d at 1298. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory justification for the discharge. Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1116 (10th Cir. 2001). "If the employer meets this burden, the burden shifts back to the plaintiff but the plaintiff must show clear and convincing evidence that he or she was terminated in retaliation for exercising rights under the Workers' Compensation Act." Id. (quotation omitted).

AlliedSignal does not dispute that Foster suffered a work-related injury for which she might file a claim, that it had knowledge of the injury, or that it

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

terminated Foster's employment. The company contends, however, that it is entitled to summary judgment because "there is simply no evidence to support the fourth element of plaintiff's prima facie case."[3] (Appellee's Br. at 17.) AlliedSignal is mistaken.

To establish a causal connection, a plaintiff must establish that the individual or individuals who actually undertook the alleged retaliatory acts were aware or should have been aware of plaintiff's participation in the protected activity. See Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1265 (10th Cir. 1998) (holding that a retaliatory discharge claim must be predicated on intentional and knowing retaliation); see also Fenton v. HiSAN, Inc., 174 F.3d 827, 832 (6th Cir. 1999); Cohen v. Fred Meyer, Inc., 686 F.2d 793, 797 (9th Cir. 1982). Foster must therefore show that at the time of her discharge the AlliedSignal decisionmakers responsible for her firing knew or should have known that the absences for which she was discharged were the result of her work-related injury.

The two company personnel directly responsible for Foster's

---

[3] Citing no authority, AlliedSignal contends that the fourth, causal-connection element of a prima facie case must be established by "clear and convincing" evidence. (Appellee's Br. at 16.) Holding a plaintiff to such a standard at the prima facie stage would pervert the logic of the McDonnell Douglas burden-shifting scheme adopted by the Kansas courts. See Rebarchek v. Farmers Coop. Elevator & Mercantile Assoc., 35 P.3d 892, 901 (Kan. 2001) ("A claimant's 'prima facie case is not an onerous burden under the McDonnell Douglas burden-shifting scheme'" (quoting Robinson v. Wilson Concrete Co., 913 F. Supp. 1476, 1483 (D. Kan. 1996)).

-8-

firing—supervisor Trageser and human resources manager Williams—both claim not to have been aware either that Foster was requesting medical leave due to a work-related injury or that she had filed a workers compensation claim . Foster has provided no direct evidence that they were, in fact, cognizant of these circumstances. Nonetheless, AlliedSignal admits that Trageser knew Foster had been injured on the job (Appellee's Br. at 3), that both Trageser and Williams knew she had sought a medical leave of absence (id. at 6, 8), and that both men knew the leave had been denied by the company's medical department (id.). Together with the timing of Foster's firing—during an absence occasioned by a work-related injury, days after she indicated she was filing for workers compensation benefits—this evidence establishes a causal connection sufficient to round out Foster's prima facie case. See Rebarchek v. Farmers Coop. Elevator & Mercantile Assoc., 35 P.3d 892, 899 (Kan. 2001) ("Proximity in time between the claim and discharge is a typical point for proof of a causal connection."). We thus conclude that Foster has sufficiently made out a prima facie case of retaliation.

The burden thus shifts to AlliedSignal to articulate a legitimate, nonretaliatory justification for its termination of Foster's employment. The company has sufficiently done so by contending that Foster was fired because she violated the company's attendance rules. The burden now shifts back to Foster to

demonstrate that the justification articulated by AlliedSignal is pretextual.

To avoid summary judgment after an employer has articulated a legitimate, non-retaliatory reason for the termination, "the employee must assert specific facts establishing a triable issue as to whether the employer's reason for discharge is a mere cover-up or pretext for retaliatory discharge." Bracken v. Dixon Indus., Inc., 38 P.3d 679, 682 (Kan. 2002) (citing Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). "Although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (internal citation omitted and ellipses in original) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)). The employee's ultimate burden is to establish retaliation "by a preponderance of the evidence, but the evidence must be clear and convincing in nature." Ortega, 874 P.2d at 1198. Evidence is clear "if it is certain, unambiguous, and plain to the understanding," and it is convincing "if it is reasonable and persuasive enough to cause the trier of facts to believe it." Id. Clear and convincing evidence is "not a quantum of proof, but rather a quality of proof." Id.; see Barbara Oil Co. v. Kan. Gas Supply Corp., 827 P.2d 24, 32 (Kan. 1992).

Foster correctly notes that under Kansas law a plaintiff in a retaliation case "need not meet the clear and convincing standard at the summary judgment stage of the proceedings," Rebarchek, 35 P.3d at 898, and that a plaintiff "can successfully oppose a motion for summary judgment by a preponderance of the evidence," Bracken, 38 P.3d at 683. Thus, she argues, in the present action she is likewise relieved of having to meet this evidentiary standard. On this latter point she is mistaken. Although it is true that a Kansas court will not apply the clear-and-convincing standard at the summary judgment stage in an action for retaliation in the state's own courts, a federal court sitting in diversity will be guided by federal-law standards governing summary judgment procedure. As the Supreme Court explained in Anderson v. Liberty Lobby, Inc.,

> [I]n ruling on a motion for summary judgment, the judge must view the evidence through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of the determination. The question here is whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant . . . .

477 U.S. 242, 254 (1986). The Court thus concluded that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages." Id. at 255. Given the

-11-

Court's clear directions, we hold that a plaintiff in federal court who opposes a summary judgment in a retaliatory discharge case based on Kansas law must set forth evidence of a clear and convincing nature that, if believed by the ultimate factfinder, would establish that plaintiff was more likely than not the victim of illegal retaliation by her employer.

AlliedSignal contends that under this standard the district court was correct in finding that Foster cannot survive summary judgment with the evidence that she has proffered. We disagree. Viewing Foster's evidence in the light most favorable to her and drawing reasonable inferences therefrom, we conclude that the district court should not have granted summary judgment to defendant. A federal court's responsibility to apply the clear-and-convincing standard of proof at the summary judgment stage is not a license to engage in a mini-trial. Indeed, as the Supreme Court explained in Anderson,

> Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

Anderson, 477 U.S. at 255 (citations omitted). Because our responsibility to apply the clear-and-convincing standard of proof at summary judgment does not authorize us to perform jury functions, our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim.

Foster has provided sufficient evidence to survive summary judgment. At the very least, she has presented evidence that, if believed, would be sufficient for a factfinder to conclude that (1) her December absences were due to her work-related injury, (2) the company personnel responsible for firing her either knew or should have known that her absences were related to a work injury, and (3) her employment was terminated within a week of AlliedSignal's receipt of notice that she had filed a workers compensation claim. In order to affirm summary judgment for AlliedSignal, we must conclude that Foster "failed to produce any evidence from which a reasonable inference could be drawn" that AlliedSignal's proffered reasons for her firing were pretextual. Stewart v. Adolph Coors Co., 217 F.3d 1285, 1291 (10th Cir. 2000), cert. denied, 531 U.S. 1077 (2001). Particularly given that "[c]lose proximity in time may provide some probative evidence of retaliatory intent," Sanjuan, 160 F.3d at 1299, we cannot conclude that Foster has failed to meet her burden at the summary judgment stage. See also Gertsch v. Cent. Electropolishing Co., 26 P.3d 87, 90 (Kan. Ct. App.) (reversing

summary judgment for defendant because plaintiff "presented evidence of a retaliatory motive. The trial court agreed that Gertsch presented evidence of close temporal proximity to his discharge and the protected activity. This is highly persuasive evidence of retaliation."), review denied, 2001 Kan. LEXIS 722 (Kan. Sept. 26, 2001).

In its grant of summary judgment to AlliedSignal, the district court held that Foster had failed to set forth any evidence that the company's articulated reasons for her discharge were a pretext for a retaliatory motive, and seemed to require Foster to show by "clear and convincing evidence that she was not in violation of [AlliedSignal's] attendance policies." (3 Appellant's App. at 808.) We have already noted that Foster presented substantial circumstantial evidence from which one might derive an inference of retaliatory intent. In addition, we reiterate that a plaintiff does "not need to show that retaliation was the employer's sole motive or reason for the termination." Sanjuan, 160 F.3d at 1298. Accordingly, a plaintiff in a retaliatory discharge case need not prove that her employer's proffered, nonretaliatory motive for terminating her employment was a factual impossibility. Rather, plaintiff can simply demonstrate that her discharge "was 'based on,' 'because of,' 'motivated by,' or 'due to' the employer's intent to retaliate." Id. (quoting Brown, 815 P.2d at 88). Foster's evidence, if believed by the jury, is sufficient to do so.

-14-

**III**

The district court's grant of summary judgment to defendant AlliedSignal is **REVERSED**, and this case is **REMANDED**.