**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 4, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEPHANIE K. WALLACE,

Plaintiff-Appellant,

v.

MICROSOFT CORPORATION,

Defendant-Appellee.

No. 11-3111
(D.C. No. 2:07-CV-02379-EFM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

This dispute is before us for the second time. In the first appeal, we affirmed the grant of summary judgment to Microsoft on Mr. Wallace's breach-of-contract claim but reversed and remanded Mr. Wallace's state-law-tort claims of wrongful discharge and outrage.[1] This appeal is from the district

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The tort of outrage is interchangeable with the tort of the intentional infliction of emotional distress and sustains liability "only in those cases where

(continued...)

court's order granting Microsoft's motion for summary judgment on the tort claims and denying Ms. Wallace's motion to supplement the amended complaint to add a wrongful death claim.[2] Our jurisdiction arises under 28 U.S.C. § 1291, and because we agree with the district court that Ms. Wallace has failed to raise a genuine issue of fact upon which she has the evidentiary burden – namely that defendant Microsoft caused the torts alleged – we affirm.

Mr. Wallace was employed as a Senior Consultant with defendant Microsoft, a position which, as performed, required extensive traveling. He fell and was injured on a public sidewalk while walking to a company meeting. He was placed on worker's compensation leave for most of February 2004 and filed a worker's compensation claim on February 26, 2004. He returned to work, albeit from home, during March of that year, but was again placed on worker's compensation leave when Microsoft could no longer accommodate his medical restrictions which specifically prohibited him from traveling. During the majority of his leave, Mr. Wallace continued to contact Microsoft about the possibility of performing other jobs in the company that would still accommodate his

---

[1](...continued)
the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981).

[2]    During the first appeal process, Mr. Wallace died, and his wife, Stephanie, was substituted as plaintiff.

restrictions. Microsoft never offered Mr. Wallace alternative employment, and Mr. Wallace was never able to provide Microsoft with a medical release allowing him to return to his previous job.

On May 27, 2005, after Mr. Wallace had been on medical leave for sixty weeks, Microsoft terminated his employment because it remained unknown whether and/or when he would be able to return to work. More than two and one-half years later, Mr. Wallace accepted a settlement of his worker's compensation claim in which he acknowledged that he had been temporarily totally disabled between January 29 and February 25, 2004, and from April 1, 2004, through January 31, 2008.

In May 2007, Mr. Wallace filed the petition in state court that ultimately gave rise to this case. Microsoft removed the case to federal court and, as explained, this court eventually remanded the state-tort claims of wrongful discharge and outrage to the district court for further proceedings. This matter is Ms. Wallace's appeal from the district court's grant of summary judgment to Microsoft on her tort claims and from the court's refusal to allow Ms. Wallace to supplement her amended complaint.

On appeal, Ms. Wallace first argues that the district court erred in applying the federal standard of "clear and convincing" proof at the summary judgment level instead of the more lenient state "preponderance" standard. Secondly, she asserts that she met her burden to establish a causal connection between the filing

of the worker's compensation claim (the protected activity) and Mr. Wallace's termination. Thirdly, she challenges the propriety of the district court's grant of summary judgment to Microsoft on her claim of outrage, and finally, she contends that the district court erred in denying her motion to supplement the amended complaint. We will address each claim in order.

Our de novo review of a grant of summary judgment requires that we apply the same legal standard used by the district court. *Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1192 (10th Cir. 2002). Thus, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. To avoid summary judgment, the party opposing the motion must establish, at a minimum, an inference of the existence of each essential element to the case." *Foster*, 293 F.3d at 1192 (citation omitted).

The first issue, whether the district court applied the correct standard of proof, gives us little pause. Ms. Wallace argues that because this case was removed from state to federal court, the Kansas standard for summary judgment should have been applied. Under that standard, while she would have had to prove her retaliation case at trial with "clear and convincing" evidence, she would have been able to successfully oppose a motion for summary judgment by a

preponderance of the evidence. *See id.* at 1194. Ms. Wallace concludes that, by applying the federal standard which requires the same standard of proof at the summary judgment stage as would have been required at the trial on the merits, she effectively has a reduced chance of prevailing against a motion for summary judgment, thus depriving her of her Seventh Amendment right to trial by jury. This contention is unsupported by legal authority and meritless.

We have recently reaffirmed that "although we will look to [state] law to determine what elements the plaintiffs must prove at trial to prevail on their claims, we will look exclusively to federal law to determine whether plaintiffs have provided enough evidence on each of those elements to withstand summary judgment." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1129 (10th Cir. 2009) (citation omitted). This rule is supported by the holding in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), that, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden" and that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case," *id.* at 255. The district court properly required Ms. Wallace to abide by the federal-summary-judgment standard and "'set forth evidence of a clear and convincing quality that, if believed by the ultimate factfinder, would establish that Plaintiff was more likely

than not the victim of illegal retaliation by [his] employer.'"  Aplt. App. at 565

(quoting *Foster*, 293 F.3d at 1195).

We next address Ms. Wallace's contention that summary judgment for

Microsoft on her retaliatory discharge claim was erroneous.

> Kansas courts have adopted the *McDonnell Douglas* [411 U.S. 792
> (1973)] burden-shifting framework for analyzing retaliatory
> discharge cases.  At the first stage, a plaintiff makes out a prima
> facie case raising a rebuttable presumption of retaliatory intent by
> showing that (1) he or she filed a claim for workers' compensation
> benefits, or sustained an injury for which he might assert a future
> claim for such benefits; (2) that the employer had knowledge of
> plaintiff's compensation claim, or the fact that he had sustained a
> work-related injury for which the plaintiff might file a future claim
> for benefits; (3) that the employer terminated the plaintiff's
> employment; and (4) that a causal connection existed between the
> protected activity or injury, and the termination.

*Foster*, 293 F.3d at 1193 (footnote, quotation, and citation omitted).  The only

element in dispute is the last, or causation, element.  And on that element, the

district court concluded that there was no evidence of a causal connection

between Mr. Wallace's worker's compensation claim and his eventual

termination.  Because there was more than a year between those two events,

Ms. Wallace could not rely on temporal proximity to establish causation.  Other

evidence in the record, including an email chain between Microsoft employees,

was viewed by the court as simply showing Microsoft attempting to "establish[]

realms of accommodation, and whether such accommodation would be feasible

for Wallace."  Aplt. App. at 567.  We agree, especially after examining the record

-6-

which contains the totality of the emails, and not just the selectively edited portions Ms. Wallace included in her brief.

The court further concluded that, even if Ms. Wallace had made a prima facie case, summary judgment would still lie for Microsoft because Ms. Wallace could not prove retaliatory intent or that Microsoft's non-discriminatory reason for firing Mr. Wallace – his inability to travel – was pretextual. Ms. Wallace objects to this conclusion, repeatedly noting that a travel requirement was not included in Microsoft's job description for a senior consultant until after the company learned of Mr. Wallace's travel restriction. This is factually incorrect.

As early as December 2003, well before his injury, Microsoft had instituted mandatory travel guidelines for Senior Consultants such as Mr. Wallace that required him to "travel Monday morning, and then work Monday afternoon through Thursday afternoon at the client. Thursday evening would be reserved for travel home. Friday would be client billable working remotely from home." Aplt. App. 280. Mr. Wallace was informed by his supervisor of these requirements. Ms. Wallace's attempt to create pretext by implying that Microsoft only came up with travel requirements after Mr. Wallace could no longer meet them is disingenuous.

We next turn to Ms. Wallace's contention that summary judgment on her outrage claim was inappropriate. To establish a cause of action for outrage, or

the intentional infliction of emotional distress, a plaintiff must satisfy four

elements:

> (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe.

*Roberts*, 637 P.2d at 1179.  The Kansas Supreme Court requires courts to

determine as a matter of law in the first instance:

> (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

*Id.*

Applying Kansas case law, the district court held that "terminating an

employee for not being able to perform his job is . . . not extreme and outrageous

conduct."  Aplt. App. at 571.  We agree.  The evidence pointed to by Ms. Wallace

does not establish the tort of outrage any more than it established causation for

the retaliatory discharge claim.

This leaves the district court's refusal to allow Ms. Wallace to supplement

her amended complaint to add a claim for the wrongful death of Mr. Wallace.

The district court held that Ms. Wallace's wrongful death claim was barred by the

exclusivity provisions of the Kansas Worker's Compensation Act.[3] Alternatively, it held that amendment would be futile because the proposed supplemented amended complaint failed to state a claim upon which relief could be granted. We agree with the district court that Ms. Wallace alleged no facts in the proposed amended complaint which could have established causation, thus rendering yet another amendment futile. *See* Aplt. App. at 331-33.

The judgment of the district court is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[3] This court has held that "the Kansas legislature chose to eliminate civil causes of action seeking to redress injuries for which workers' compensation benefits are recoverable. Plaintiffs, therefore, never had a vested property interest in their survival and wrongful death action." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 789 (10th Cir. 2000) (quotation omitted).