**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARC BENJAMIN,

     Plaintiff - Appellant,

v.

BOARD OF TRUSTEES OF BARTON
COUNTY COMMUNITY COLLEGE,

     Defendant - Appellee.

No. 19-3048
(D.C. No. 2:17-CV-02557-JAR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **CARSON**, Circuit Judges.
_____

Plaintiff Marc Benjamin coached women's softball at Barton County

Community College.  On the athletic director's recommendation, Defendant Board of

Trustees of Barton County Community College fired Plaintiff.  Plaintiff claims the

athletic director retaliated against him for reporting that other coaches violated

athletic conference and association policies.  Defendant claims it fired Plaintiff for

unprofessional actions, poor attitude, and sub-par recruiting.  The district court

granted Defendant's summary judgment motion.  We exercise jurisdiction under 28

U.S.C. § 1291 and reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Barton County Community College ("the College") hired Plaintiff as its head women's softball coach in August 2013. And in his time coaching at the College, Plaintiff achieved success. For three years, the athletic director, Trevor Rolfs, recommended that the College renew Plaintiff's contract.[1]. His team won the 2015 National Junior College Athletic Association Region VI Championship and set a school record for victories in the 2015–16 season with 51 wins and 8 losses.

Despite Plaintiff's successes, Rolfs had some issues with Plaintiff. According to Rolfs, Plaintiff had a bad attitude. Plaintiff told Rolfs that the College did not appreciate him and complained that the College did not adequately support his winning softball program. Rolfs heard Plaintiff was looking for another job. Rolfs also questioned Plaintiff's professionalism. Two players complained about Plaintiff before 2016—one in 2013 and the other in 2015. A member of the Athletic Department, in January 2016, complained that Plaintiff used foul language toward a colleague at a basketball game. Rolfs also questioned Plaintiff's use and maintenance of the softball team's discretionary account. Plaintiff inherited an $18,000 discretionary account but left only $1,000 in it when he eventually departed. Finally, Rolfs questioned Plaintiff's recruiting ability and effort. At the start of the 2016 softball season, Plaintiff had only nine players on his roster even though the rules allowed twenty.

---

[1] Plaintiff admits that he was an employee at will under his coaching contract.

2

During Plaintiff's annual performance review in June 2016, Rolfs addressed both Plaintiff's successes and shortcomings. Rolfs discussed Plaintiff's negative attitude, his failure to maintain the softball facilities, and his inability to manage his budget. But Rolfs did not discipline Plaintiff for these incidents.

Later, on February 20, 2017, Plaintiff met with Rolfs to inform him of potential athletic conference violations. The College is a member of the Kansas Jayhawk Community College Conference ("KJCCC"). The KJCCC prohibits its members from providing their student athletes paid travel to and from home or college. Plaintiff told Rolfs that the College's men's and women's basketball teams had paid for student flights to and from home. Rolfs investigated Plaintiff's complaint, but as athletic director, Rolfs had reviewed and approved those prohibited flights. And although Rolfs admitted in his deposition that the College had in fact violated this rule, he clarified that it had not done so after the summer of 2016 when the KJCCC sent a clarifying email about the prohibition. In any event, Rolfs informed the KJCCC about Plaintiff's complaint and agreed to undertake an internal investigation. Ultimately, the KJCCC did not sanction the College.

Rolfs testified that in April 2017, several softball players and parents complained about Plaintiff's inappropriate behavior. Rolfs asked the complainants to put their complaints in writing. Rolfs then created a timeline of the new and past complaints against Plaintiff and put that timeline in Plaintiff's file—something he had not done for other coaches. Of note, Rolfs did not inform Plaintiff about the complaints until his termination.

Six weeks after Plaintiff notified Rolfs of the rules violation, Rolfs told the College's Director of Human Resources that he planned to recommend Defendant not renew Plaintiff's contract. In line with that statement, Rolfs wrote a report based on the complaints he received in April, which he submitted to the College's president. Rolfs recommended against renewing Plaintiff's contract. The president conferred with the Board of Trustees and informed Rolfs that the College agreed to terminate Plaintiff's employment immediately. Rolfs then met with Plaintiff on May 8, 2017, and terminated his employment. Rolfs provided Plaintiff with a memorandum from the president confirming that the College was terminating his employment because of: (1) insubordination; (2) verbal harassment; (3) unprofessional conduct; and (4) inability to manage the program in an appropriate and professional manner. Later, Rolfs elaborated that Plaintiff: (1) spent too much money; (2) had two complaints against him before 2016; (3) was disgruntled; (4) used foul language toward another Athletic Department employee at a basketball game; (5) made recruiting and retention failures; and (6) had five new complaints against him in April 2017.

Following his termination, Plaintiff filed this lawsuit against Defendants alleging breach of contract and retaliatory discharge.[2] Defendants filed a motion for summary judgment at the close of discovery. The district court concluded Plaintiff alleged a prima facie case of retaliatory discharge. Even so, it granted summary

---

[2] Plaintiff does not appeal the district court's grant of summary judgment on his breach of implied and express contract claims.

judgment for Defendants, holding that no reasonable jury could conclude the College's reasons for terminating Plaintiff were pretextual.

## II.

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Foster v. Alliedsignal, Inc., 293 F.3d 1187, 1192 (10th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence, as well as draw reasonable inferences from it, in a light most favorable to the nonmoving party. Foster, 293 F.3d at 1192.

"Kansas generally follows the employment-at-will doctrine, meaning that employment is terminable at will by either the employer or the employee for any reason or for no reason at all." Id. (citing Morriss v. Coleman Co., 738 P.2d 841, 846 (Kan. 1987)). Exceptions arise, however, from public policy. Dickens v. Snodgrass, Dunlap & Co., 872 P.2d 252, 262 (Kan. 1994). A Kansas employer may not fire an at-will-employee in retaliation for whistle-blowing. Id. In that instance, the termination may be actionable if the employee can prove "that the discharge was 'based on,' 'because of,' 'motivated by' or 'due to' the employer's intent to retaliate." Sanjuan v. IBP, Inc., 160 F.3d 1291, 1298 (10th Cir. 1998) (citing Brown v. United Methodist Homes for the Aged, 815 P.2d 72, 88 (Kan. 1991)). The employee need not show that the employer's sole motive or reason for termination was retaliation. Id. Nor does Kansas law require direct proof of retaliatory intent.

5

Foster, 293 F.3d at 1192 ("Retaliatory discharge cases must generally be proven by circumstantial rather than direct evidence because rarely will an employer admit to having discharged an employee in retaliation for exercising a right.").

Kansas courts apply the United States Supreme Court's burden-shifting framework in retaliatory discharge cases. Id. at 1193; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) (providing the burden-shifting framework). Under this framework, a plaintiff first must establish a prima facie case raising a rebuttable presumption of retaliatory intent. Foster, 293 F.3d at 1193. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory justification for the discharge. Id. Once the defendant meets its burden of production, "the presumption of discrimination 'drops out of the picture'" and the burden shifts back to the plaintiff to demonstrate that the defendant's justification is pretextual. Id. at 1194 (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000)). The trier of fact may "consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. A plaintiff in federal court that opposes summary judgment in a retaliatory discharge case based on Kansas law "must set forth evidence of a clear and convincing nature that, if believed by the ultimate factfinder, would establish that plaintiff was more likely than not the victim of illegal retaliation by [his] employer." Macon v. United Parcel Serv., Inc., 743 F.3d 708, 713 n.2 (10th Cir. 2014) (quoting Foster, 293 F.3d at 1195).

6

III.

The only issue before us on appeal is whether Plaintiff has shown a genuine

dispute of material fact about whether the College's proffered reasons for terminating

his employment are "pretextual—i.e. unworthy of belief."[3] Annett v. Univ. of

Kansas, 371 F.3d 1233, 1240 (10th Cir. 2004). To that end, Plaintiff relies on three

pieces of circumstantial evidence: (1) the short temporal proximity between

Plaintiff's reporting to Rolfs that the College violated conference rules and the

College's termination of his employment; (2) the fact that many of Rolfs' reasons for

terminating Plaintiff occurred long before Plaintiff's report or the decision to fire

him; and (3) the manner in which Rolfs terminated him. We address each in turn.

"[T]he pertinent question in determining pretext is not whether the employer

was right to think the employee engaged in misconduct, but whether that belief was

genuine or pretextual." Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir.

2006) (quoting Hardy v. S.F. Phosphates L.C., 185 F.3d 1076, 1080 (10th Cir.

1999)). "Close temporal proximity between the employee's complaint and the

---

[3] Defendant asserts that we should affirm the district court's summary judgment result on a different ground. Defendant claims a violation of the KJCCC rules cannot lead to retaliatory discharge because the violations are of private policies and not public policies. Defendant, however, forfeited this argument because it did not first raise it before the district court. And on appeal, Defendant fails to develop the argument, devoting only two paragraphs to the issue and relying mainly on an unpublished report and recommendation from the District of South Carolina. Because Defendant did not fully develop this forfeited argument or otherwise demonstrate plain error, we decline to exercise our discretion to affirm on this alternative ground. United States v. Watson, 766 F.3d 1219, 1236 n.12 (10th Cir. 2014).

7

adverse employment action is a factor in determining whether the employer's proffered reason is a pretext for retaliation." Id.

Plaintiff's notification of the rules violation to Rolfs, the five parent and student complaints, and Plaintiff's termination all occurred between February 20, 2017 and May 8, 2017. Plaintiff decided to terminate Plaintiff on April 11, 2017. "This close temporal proximity suggests pretext, but is not sufficient by itself to raise an issue of fact." Pastran, 210 F.3d at 1206 (noting close temporal proximity when events occurred in two-month period).

Thus, we must determine whether the temporal proximity combined with the other evidence demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the College's proffered reasons for his termination that "a reasonable factfinder could rationally find them unworthy of credence." Annett, 371 F.3d at 1241.

To start, we note that Plaintiff and Rolfs present differing versions of the events leading up to Plaintiff's termination. Rolfs believed that Plaintiff had an attitude problem. Rolfs also heard rumors about Plaintiff's efforts to leverage his success into a different coaching position. Plaintiff, on the other hand, testified that although he did feel underappreciated, the College did not provide him with adequate resources. He testified that he withdrew his name from consideration for the only position to which a school named him a finalist.

As to Rolfs' accusations of recruiting failures, Plaintiff testified that he expressed surprise when six or seven softball players decided not to return for the

8

2016–17 season. He testified that one player left the College because she was home sick while two players had too many credit hours to play. Another university offered one of the players a full-ride scholarship. One player told him she could not afford to stay at the College and was moving back to Utah. Finally, another player told him that she would be playing volleyball in the fall and then graduating. That year, the team played with a roster of twelve to fifteen players. Despite the small number of players, the team finished the season with a winning record. Plaintiff claims that he continued to recruit, securing thirteen letters of intent for new students for the 2017–18 season. In short, Plaintiff believes Rolfs knew the roster shortage had nothing to do with Plaintiff's recruiting.

As for Rolfs complaints about Plaintiff's handling of the discretionary fund, both Rolfs and Plaintiff testified that Plaintiff had managed the budget within his discretion as head softball coach.

Additionally, Plaintiff and his former assistant coach deny the player-based allegations against Plaintiff. Plaintiff denies belittling players and making inappropriate remarks about them, the College, or Rolfs. Rather, Plaintiff contends the 2017 complaints arose from a small group of friends on the softball team who had violated team rules. Plaintiff subsequently dismissed those players from the team.

Plaintiff offers two additional items of evidence he claims demonstrate pretext. He first contends many of the reasons Rolfs listed as grounds for termination occurred long before Plaintiff's report or Rolfs' decision to cause his removal in April 2017. Plaintiff points out that the College knew of the two pre-2017

9

complaints as well as the January 2016 incident at the basketball game. He also produced evidence that Rolfs and the College were aware of his alleged lack of fiscal discipline with the softball budget. Despite knowledge of these facts, the College renewed his contract in 2016 and did not reprimand him.

Sometimes dismissal without prior discipline does not show pretext. Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1291 (10th Cir. 2013). But that does not mean, in this case, that Defendant's previous failure to discipline Plaintiff for the conduct it claims ultimately caused his termination cannot be evidence of pretext. Indeed, drawing all inferences in favor of Plaintiff, the non-moving party, the considerable delay—in some cases, years—between the alleged misconduct and the termination could show pretext. Thus, while a lack of prior discipline, in and of itself may not demonstrate pretext, a jury certainly can consider that an employer was aware of an issue, did nothing about that issue, then later terminated that employee for that earlier issue *after* the employee reported misconduct.

Plaintiff also contends the manner in which Rolfs conducted the termination demonstrates pretext. Rolfs created a timeline of past conduct to support Plaintiff's termination. He also received several player and parent complaints that he asked them to put in writing. The district court rejected Plaintiff's "papering" theory—i.e., that his employer manufactured issues to place in his employment file after it made the determination to fire him—because the complaints came from players and parents and not directly from Rolfs. The district court also rejected the argument because no evidence in the record existed that Rolfs falsified any of the complaints. The district

10

court correctly stated that no evidence demonstrates Rolfs made up or requested the complaints from the players and their parents. Thus we do not infer pretext from Rolfs collection of complaints he did not solicit. But taking Plaintiff's deposition testimony as true, evidence in the record suggests that the complaining players may have had motive to file false complaints against Plaintiff. Plaintiff contends that when examined, the reasons for termination fall flat, and a reasonable jury could infer retaliatory intent. We agree. A reasonable jury might consider this circumstantial evidence of retaliatory motive.[4]

"In combination with the evidence of temporal proximity, this evidence— although far from conclusive—raises an issue of material fact as to whether Defendant offered a pretextual reason for terminating Plaintiff." Pastran, 210 F.3d at 1206. Ultimately, this case presents the classic scenario of two parties telling us two very different stories. We, therefore, hold that Plaintiff produced enough evidence to survive summary judgment on his Kansas state-law retaliatory discharge claim. A reasonable jury could conclude that Plaintiff made out a prima facie case and

---

[4] The College did not inform Plaintiff of the 2017 player complaints or the alleged recruiting failures until his termination. A failure to conduct what appeared to be a fair investigation of a violation that purportedly prompted adverse action may support an inference of pretext. Smothers v. Solvay Chems., Inc., 740 F.3d 530, 542 (10th Cir. 2014). Plaintiff, however, forfeited this argument because he did not raise it below. Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011). Although Plaintiff argues for plain error review in his opening brief, proving plain error in civil cases is often an "extraordinary, nearly insurmountable burden." Id. at 1130. And Plaintiff fails to meet his burden here. Because we remand this case to the district court, however, Plaintiff may again have a chance to present evidence that the College's failure to present him with the allegations prior to his termination demonstrates pretext.

11

established that Defendant's asserted justification for his firing was pretextual. "At this stage of the case, that is enough." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1150 (10th Cir. 2011). For these reasons, we conclude the district court erred in granting summary judgment for Defendant on Plaintiff's retaliatory discharge claim.

REVERSED and REMANDED for further proceedings.

Entered for the Court


Joel M. Carson III
Circuit Judge

12

19-3048, *Benjamin v. Barton Community College*
**TYMKOVICH**, Chief Judge, dissenting**.**

In my view, Mr. Benjamin has not "set forth evidence of a *clear and convincing* nature that, if believed by the ultimate factfinder, would establish that plaintiff was more likely than not the victim of illegal retaliation by [his] employer." *See Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 n.2 (10th Cir. 2014) (applying Kansas law) (emphasis added). This record does not contain sufficient evidence that Mr. Rolfs's decision to terminate Mr. Benjamin amounted to pretext designed to obscure an improper retaliatory motive.

The majority opinion primarily credits Mr. Benjamin's argument that Mr. Rolfs knew of the unprofessional and insubordinate conduct for which he was eventually fired *before* renewing his contract for the 2016-2017 academic year. In so doing, the majority assumes Mr. Benjamin's "whistleblower" report represented the only noteworthy development in his relationship with Mr. Rolfs during the 2016-2017 academic year. Largely for this reason, the majority opinion concludes a reasonable jury might determine that Mr. Rolfs "was aware of an issue, did nothing about that issue, then later terminated [Mr. Benjamin] for that earlier issue *after* the employee reported misconduct." Maj. Op. 10–11 (emphasis in original).

But the majority opinion fails to account for another important event during the 2016-2017 academic year. In October 2016, Mr. Benjamin met with the Director of Human Resources to express a wide range of concerns regarding his position within the Athletics Department. Most notably, Mr. Benjamin alleged that Mr. Rolfs had publicly

inquired into his sexual orientation during a basketball game. The Director of Human Resources investigated this allegation, soliciting written recollections from both Mr. Rolfs and another witness identified by Mr. Benjamin. Both Mr. Rolfs and this second witness—another employee of the Athletics Department—repudiated Mr. Benjamin's allegations. The Director of Human Resources relayed to Mr. Benjamin that neither witness had corroborated his account.

In addition, the record indicates Mr. Benjamin gave voice to a litany of related grievances that had nothing to do with his "whistleblower" report shortly *before* he registered those concerns. He indicated that he was unhappy with his circumstances at Barton Community College, and he highlighted his poor relationship with Mr. Rolfs as a cause for significant concern. In light of these developments, I do not believe a reasonable jury could conclude the unprofessional and insubordinate conduct for which Mr. Benjamin was eventually terminated amounted to pretext.

Nor do I agree with the majority opinion's alternative conclusion that a reasonable jury might determine "the manner in which [Mr.] Rolfs conducted the termination demonstrates pretext." Maj. Op. 11. I would not infer a factual dispute solely from Mr. Benjamin's incomplete repudiation of the player and parent complaints solicited by Mr. Rolfs. When twice asked in his deposition whether he had accounted for one player's injuries in terms both racially and sexually charged, Mr. Benjamin responded only that *he did not recall* those remarks. And—again, in his deposition—Mr. Benjamin conceded

2

that he *had* commented on the sexual orientation of a different player during a tournament game. Both remarks strike me as plainly inappropriate.

Moreover, the accounts that aggrieved players and parents shared with Mr. Rolfs paint a uniformly negative picture of Mr. Benjamin. And the record discloses no evidence— beyond his bare assertions—that these individuals contrived their accounts out of some misplaced desire for revenge. Even if Mr. Benjamin were correct on this point, Mr. Rolfs could have credited these accounts—even if incorrectly—as a basis for termination. *Cf. Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (Gorsuch, J.) (In the Title VII context, "the relevant 'falsity' inquiry is whether the employer's stated reasons were held in good faith at the time of the discharge, even if they later prove to be untrue.").

In sum, Mr. Benjamin has not carried his burden of developing clear and convincing evidence that a reasonable jury could credit to conclude he was fired for pretextual reasons.